**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**ANDREW CARROLL,**

               Plaintiff,

           -against-

**THOMAS C. KRUMPTER, Acting Police**
**Commissioner, Nassau County, New York**

**STEVEN E. SKRYNECKI, Chief of**
**Department, Nassau County Police**
**Department,**

**DANIEL P. FLANAGAN, Commanding**
**Officer, First Precinct, Nassau County Police**
**Department,**

**Officer BUDINILIC, Badge No. 3051, First**
**Precinct, Nassau County Police Department**

**JOHN DOE, Sargent First Precinct, Nassau**
**Police Department,**

**NASSAU COUNTY POLICE**
**DEPARTMENT,**

**and**

**COUNTY OF NASSAU**

              Defendants

CIVIL ACTION NO.
CV 15 – 01550 – (ADS)
(ARL)

**MEMORANDUM OF LAW**
**INSUPPORT OF MOTION FOR**
**PRELIMINARY INJUNCTION**

Jury Trial Demanded

TABLE OF CONTENTS

Title                                                                                          page

Table of Authorities  ………………………………………………..………ii

I.        Facts ………………………  ……………………………………………1

II.       Policy of Nassau County Police Department  ……………………. ……….2

III.      Policy as Applied  ……………………………..  ..……………………3

          A.        Case of Carroll  …………………………………………………4

          B.        Case of Weinstein  ……………… ..…………………………… 4

          C.        Case of Livore  ……….……………………………………………4

IV.       Second Amendment Violations  ……………………… …………………6

V.        Violations of 4th, 5th and 14th Amendment Rights  …………………… ….8

VI.       Post Deprivation Hearing Should be Extended to
          Handguns and Pistol Permits  …………………………...…………….12

VII.      Right to Injunctive Relief  …………………………………………..13

VIII.     New York Penal Law Article 400, Unconstitutional as Applied  ………..15

Conclusion  .....................…………………………………… ………………18

TABLE OF AUTHORITIES

Authority                                                        page

CASES:

Federal:

*District of Columbia v. Heller* 554 U.S. 570, 128 S. Ct. 2783 (2008) ……..6, 7, 8, 12, 13

*Ezell v. City of Chicago* 651F.3$^d$ 684, 7th CA, 2011 ……………………………12, 13, 14

*Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 898 (1976) ……………………………10

*McDonald v. City of Chicago* 561 U.S. 742, 130 S. Ct. 3020 (2010) ………...8, 12, 14

*Monell v. Dept of Social Services of the City of New York*,
436 U.S. 658, 98 S.Ct. 2018, 1978 …………………………………………………….…9

*Original Fayette County Civic and Welfare League v. Elligton*,
W.D. Tenn. 309 F. Supp. 89. W.D. Tenn, 1970 ………………….....…………………14

*Razzano v. County of Nassau*, 765 F.Supp.2d. 176, E.D.N.Y.  (2011) …....9, 10, 11, 12

*Tara Enterprises v. Humble, C.A. 8, 1980, 622* F2d. 200……….…………………….14

State:

Biggerstaff v. Drago, 65 A.D.3d 728, 883 N.Y.S.2d 657 (3d Dep't 2009) ……..……16

Beach v. Kelly, 52 A.D.3d 436, 860 N.Y.S.2d 112 (1st Dep't 2008) ………………..17

Broadus v. City of New York Police Dept. (License Division),
62 A.D.3d 527, 878 N.Y.S.2d 738 (1st Dep't, 2009) ………………………………...17

Cuda v. Dwyer, 967 N.Y.S.2d 302 (App. Div. 4th Dep't 2013) ………………….…15

*DeAngelo v. Burns* 124 A.D.3d 1156,  (3rd Dept., 2015) ………...……………15, 16

D'Onofrio v. Kelly, 22 A.D.3d 343, 802 N.Y.S.2d 159 (1st Dep't 2005) ...…………15

Nichols v. Richards, 78 A.D.3d 1453, 913 N.Y.S.2d 352 (3d Dep't 2010)   ……….15

Authority                                                                                      Page

Saleeby v. Safir, 289 A.D.2d 60, 734 N.Y.S.2d 139 (1st Dep't 2001)  ………………15

Seamon v. Coccoma, 281 A.D.2d 824, 721 N.Y.S.2d 884 (3d Dep't 2001)  ...………15

Constitution and Statutes:

Constitution of the United States, Amendment 2  …………………………………3, 6

Constitution of the United States, Amendment 4  ………….……...…………….…3, 8

Constitution of the United States, Amendment 5  …………………………….…3, 8

Constitution of the United States, Amendment 14  …….….……………………..3, 8


Statutes:

McKenney's New York, Penal Law Article 400  …….….…………………………15, 18

McKenney's New York CPLR, Article 78  ………………….…..……………….....11

Treaties:

*26 Fordham Urb.L.J. 121, Novak*, (1998)  …………….……………………………17

MEMORANDUM IN SUPPORT
OF MOTION FOR PRELIMINARY INJUCTION

I.

FACTS

On or about September 30, 2014, the Plaintiff ANDREW CARROLL arrived home after work and discovered one of his firearms missing. Plaintiff lived in a separate locked apartment, on the top floor of a house located in Bellmore, Nassau County, New York. His mother also lived in the same house in a basement apartment.

Plaintiff and his mother had a dispute over money Plaintiff allegedly owed his mother. When Plaintiff confronted his mother, she responded that she had entered his apartment, taken the firearm and sold or otherwise disposed of the firearm. Plaintiff became concerned about who may have gained access to his firearm and called the police.

Officer Budinilic of the Nassau County Police Department arrived, waited for backup officers and then questioned the mother in her basement apartment. Plaintiff's mother stated she had not sold the firearm and had it in her apartment and on demand of the officers delivered the firearm to them. The officers, then, without a warrant, searched Plaintiff's apartment and discovered two other firearms and seized them both.

There was no violence, threats of violence or brandishing of weapons. No charges or arrest were made and no Orders of Protection issued. Although Plaintiff's firearms were secured by action locks and in his locked apartment, following this incident, Plaintiff obtained a steel gun safe to better secure his firearms.

Plaintiff then advised the police that he has purchased the gun safe to better secure his firearms and requested the return of the firearms. Defendants have failed and refused to return his firearms and have not instituted any "prompt post deprivation hearing" to justify retention of the firearms. Plaintiff is not a "disqualified person" with respect to the purchase or possession of firearms, so has legally purchased several firearms to replace those taken by the police. (**Exhibit 1, Affirmation of Andrew Carroll**).

II.

POLICY OF NASSAU COUNTY POLICE DEPARTMENT

It is the policy, as applied, to confiscate all firearms any time there is a "domestic incident" involving a police presence, even if there were no violence, threats of violence or brandishing of weapons. This policy is set forth in OPS 10023 (**Exhibit 2**). It states that the police are to remove firearms from persons involved in "domestic incidents" "when warranted" and/or "when necessary". The directive does not define what is a "domestic incident" or when it is "necessary" to confiscate the firearms.

With respect to long guns, the Domestic Incident Liaison Officer is directed to immediately return firearms when the investigation is complete. Often the so called "investigation" takes over a year to complete, if ever.

It is policy to draw out any investigation as long as possible and destroy the firearms under a misapplication of Penal Law §400.05 after a year has passed leaving the gun owner in limbo as to whether he is getting his guns back eventually or if they will be destroyed.

Memorandum in Support                     2

This policy is further set forth on the Nassau County Police website at:

http://nyjosh.com/firearms/permit/#DOMESTIC%20VIOLENCE, which states:

**DOMESTIC VIOLENCE**

**The policy of the Nassau County Police Department is to take a pro-active stance against domestic violence. Therefore, upon notification of any domestic situation requiring police intervention, the Police Department will require the surrender of the pistol license and all firearms of any involved licensee.**

The Nassau County Police Department Pistol License Department Handbook (**Ex. 3**) at page 17 states a licensee must report:

-any domestic dispute/disturbance involving a licensee and also involving police presence

and that the same is grounds for revocation or suspension which results in confiscation.

At page 23 the Handbook states:

. . . upon notification . . . of the existence of a volatile domestic situation, the Nassau County Police Department will require the surrender of the pistol license and firearm(s) as well as rifles and shotguns of any involved licensee pending an investigation into the facts and circumstances of the domestic incident and ongoing domestic relations of the licensee and other involved party(ies).

III.

POLICY AS APPLIED

While the efforts to prevent domestic violence is laudable, the overbroad application of this policy results in the repeated and continued violation of the 2nd, 4th, 5th and 14th Amendment rights of the plaintiff and other similarly situated persons.

A.     CASE OF ANDREW CARROLL

In Plaintiff Carroll's case it is undisputed that there was no violence or threats of

violence. There was no Order of Protection against any person nor arrest or criminal

charges filed. In summary when Carroll called the police because he believed one of his

guns had been stolen, the police came and took the rest of his guns. Over six months have

elapsed. Plaintiff has heard nothing from the police. The Precinct Domestic Liaison

Officer has not contacted him. No prompt post deprivation hearing has occurred. No

firearms have been returned. This is nothing more than the blatant confiscation of private

property without due process of law.

B.     CASE OF WEINSTEIN

In Weinstein's case, now pending in this Court, cv - 14 – 7210 (ADS) (AKT),

Weinstein shouted at his adult son. Weinstein's wife called 911. Before the police arrived

the argument was resolved. There was no violence, no threats of violence and no

brandishing of weapons. It was a "domestic dispute", but did not require a police

presence. When officer Malone arrived he determined that no police presence was

required and left. Even though officer Malone had appraised the situation and believed

that no police action was necessary, he was sent back with four other officers to

confiscate plaintiff's firearms pursuant to "department policy". Thus the precinct

commander deemed the confiscation "necessary" even though the officer on the scene

felt it was not. (**Exhibit 4, Affirmation of Marc Weinstein**).

C.     CASE OF WILLIAM LIVORE

The situation of gun owner William Livore was more egregious. Mr. Livore was

recovering from bladder surgery, still passing blood, under medication when his wife and

teenage daughter got into an argument away from the house. The daughter smashed the windshield of her mother's automobile. Three days later mother and daughter were again arguing. The daughter called the police and the police came to the house in Syosset. Mr. Livore was still recovering from surgery, passing blood, in pain and under medication, taking no part in the arguments. When the police arrived, after speaking with the wife and daughter, they asked Mr. Livore to produce his pistol permit and asked if he had any firearms in the house. He said he did, they were all legal and legally owned and secured in his gun safe and he was the only person with access. Whereupon, the officers demanded he opened his gun safe and surrender all his firearms and pistol permit, which he did, as he was in no condition to contest the matter.

Mr. Livore is the owner of an automobile body shop and wrecker service and had a business carry pistol permit. He is often required to retrieve vehicles at times and places not deemed safe. As result of the confiscation of his pistol license he thought it prudent to pass up such jobs with the attendant economic impact on his business and income. The so called "investigation" took almost a year. In the mean time, Mr. Livore who is an avid high power rifle competitor, holding a Masters classification, purchased another AR 15 target rifle to use, as the Nassau County Police Department refused to return his firearms. Charges were filed against the daughter, but none against Mr. Livore. No Orders of Protection were issued as to any person. (**Exhibit 5, Affirmation of William Livore**). Mr. Livore was not a disqualified person and was legally able to purchase the new AR 15, showing the futility of the policy.

Nevertheless, this was a "domestic situation" with a "police presence", so even though Mr. Livore was not involved in the dispute and all his firearms were secured in a

safe and not accessible to anyone else in the household, they were confiscated due to "department policy". Thus it was again deemed "necessary" or the firearms created a "threat of violence" even though they were locked in a five hundred pound steel gun safe with no one but Livore having access. We again have unexcused, unreasonable and unjustified confiscation of private property by the Nassau County Police Department because of their "policy", which policy was adopted and approved by those in authority, apparently for political purposes as opposed to actual concerns for public safety or with concern regarding the constitutional rights of the citizens.

IV.

SECOND AMENDMENT VIOLATIONS

The Second Amendment to the United States Constitution, which applies to the States and subdivisions thereof through the Fourteenth Amendment, provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

This was recognized to be an individual right in the case of *District of Columbia v. Heller* 554 U.S. 570, 128 S. Ct. 2783 (2008). The Court in discussing "keep arms" stated at 2792:

> No party has apprised us of an idiomatic meaning of "keep Arms." Thus, the most natural reading of "keep Arms" in the Second Amendment is to "have weapons."

In recognizing that it is an individual right the Court stated at 2797 [ 8]:

. . . we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."

And again at 2799 [10]:

There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms.

In striking down the District of Columbia's ban on handguns and in fact any operable weapon within the home the Court stated 2817 [17]:

 The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights,[FN27] banning from the home **2818 "the most preferred firearm in the nation to 'keep' and use for *629 protection of one's home and family," 478 F.3d, at 400, would fail constitutional muster.

In discussing the scope of the right and level of scrutiny the Court stated at 2821 [18]:

The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.

And:

The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrongheaded views. The Second Amendment is no different. . . .And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding,

responsible citizens to use arms in defense of hearth and home.

In *McDonald v. City of Chicago* 561 U.S. 742, 130 S. Ct. 3020 (2010) the Court found that the right to keep and bear arms is fundamental and incorporated that right under the due process clause of the 14th Amendment, stating 791:

> In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense. Unless considerations of *stare decisis* counsel otherwise, a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States. See *Duncan,* 391 U.S., at 149, and n. 14, 88 S.Ct. 1444. We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*.

Also there can be no doubt that the right includes other than handguns as the court stated in *Heller* at 2791:

> . . . the Second Amendment extends, ***2792** prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.

The policy of the Nassau County Police Department is unconstitutional under any level of scrutiny as it totally deprives plaintiff and other similarly situated individuals of his rights to keep and bear arms in his home. It does so without any judicial process based solely on the policy set and as applied by the police department. Plaintiff does not contend that the defendants can never confiscate firearms. They would presumptively be able to do so where there was an Order of Protection against the firearms owner or where a crime has been committed or where there is a clear and immediate danger. But even in the last two instances due process requires a prompt post deprivation hearing before an impartial judicial officer, which brings us to the next subject.

V.

VIOLATION OF 4th, 5TH AND 14TH AMENDMENT RIGHTS

The policy of the Nassau County Police Department not only violates the plaintiff's and other similarly situated persons rights to keep and bear arms but also their rights under the 4th, 5th and 14th Amendments to the United States Constitution. The Fifth and Fourteenth Amendments to the United States Constitution provide that no State shall deprive any person of life, liberty, or property without due process of law.

In the case of a confiscation or firearm surrender in conjunction with an Order of Protection we assume that the owner was provided due process in the form of a hearing on notice before an impartial judge, in which the factual allegations were examined with the parties having an opportunity to be heard. Confiscations incident to a lawful arrest are presumably provided due process through criminal and/or forfeiture proceedings. In confiscations as involved the plaintiff and the affiants, no due process is provided in the way of a post deprivation hearing.

This Court has recently addressed this very issue in *Razzano v. County of Nassau*, 765 F.Supp.2d. 176 E.D.N.Y. (2011). In that case the gun owner brought action against county, county police commissioner, and county police officers, alleging under 42 U.S.C. § 1983 that defendants violated his due process rights by failing to provide him with adequate opportunity to recover rifles and shotguns that defendants confiscated from his residence. The Court found that the violation of the plaintiff's rights were a result of municipal policy under *Monell v. Dept of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 1978, establishing liability on the part of the County. As addressed in the previous part of this memorandum of law, that policy has not changed but continues in spite of this Court's decision in *Razzano*.

Memorandum in Support                    9

In *Razzano*, with regard to the search and seizure of property this Court stated at 184 [3]:

> While there exist exceptions to the probable cause requirement for seizure of a person's property, *see, e.g., Coolidge v. New Hampshire,* 403 U.S. 443, 470 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (noting the police's power, in some cases, to seize objects "dangerous in themselves"), the Fourth Amendment's probable cause protections do not cease to operate because the possessor of property is not being arrested. Indeed, such a conclusion would afford *more* constitutional protection to an accused criminal than to a person not accused of a crime.

This Court further stated at 184 [4]:

> The defendants also assert that the Nassau County Police Department's general statutory power to "preserve the public peace, prevent crime, protect the rights of persons and property, and guard the public health" validates the seizure of the plaintiff's longarms. (Defs.' Opposition at 8.) While this power might provide a valid basis for the seizure of longarms from individuals in certain cases, it cannot supersede the Fourth Amendment of the United States Constitution, which requires either a showing of probable cause or a valid exception to this general rule. *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) ("The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (internal quotations and citations omitted)).

Carroll's case does not involve any of the exceptions allowing a warrantless search. Once the officers recovered the firearm taken by the plaintiff's mother they had no cause, probable or otherwise to search the Plaintiff's apartment for other firearms, nor any cause or justification for taking plaintiff's other legally owned firearms that they discovered in his apartment as a result of their illegal search.

With regard to the question of due process requirements, this Court, after reviewing the law and facts and applying the test set forth in *Mathews v. Eldridge*, 424

U.S. 319, 96 S.Ct. 898 (1976), concluded that the New York State Article 78 proceeding

would not fullfill the requirements of due process 188 [11]. The Court stated at 189 [13]:

> To assess whether this is a reasonable additional requirement, the *Mathews* test
> requires the Court to consider both (1) the probable value of this safeguard and (2)
> its cost to the government.

> With respect to the former factor, the Court believes that a post-deprivation
> hearing would have significant value in preventing erroneous deprivation. First, to
> the extent that the police seize longarms that do not belong to the person from
> whom they are confiscated, a prompt hearing**190** will allow this to be quickly
> resolved. *See Canavan*, 1 N.Y.3d at 142–43, 770 N.Y.S.2d 277, 802 N.E.2d 616.
> More importantly, such a hearing would provide the owner of confiscated
> longarms a timely and inexpensive forum to challenge the government's holding
> of his property. Police are charged with the critical duty of protecting the public,
> and it is undeniable that even the best intentioned officers can err in making the
> on-the-spot judgments required in carrying out this duty. Timely correction of
> these mistakes is valuable. Likewise, for many gun owners—including,
> apparently, Razzano—longarms may have important sentimental value, and the
> prompt return of these weapons if wrongly possessed by the state is an important
> government obligation. Moreover, the right to bear arms is enshrined in the
> Second Amendment of the United States Constitution, and although this right is
> by no means unlimited, ownership of guns by individuals legally entitled to those
> guns is a basic right. A prompt due process hearing is likely to limit the unfair
> curtailment of this right.

> In setting out the parameters of such a proceeding this Court held at 190 [14]:

> Thus, having weighed the three *Mathews* factors, the Court finds that persons
> **191** whose longarms are seized by Nassau County are entitled to a prompt post-
> deprivation hearing, to be held as follows:

> • First, the post-deprivation hearing must be held before a neutral decision-maker.

> • Second, consistent with the Second Circuit's rulings in the *McClendon* trio, the
> right to a prompt post-deprivation hearing only applies to seized longarms that are
> not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4)

Memorandum in Support                    11

contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

• Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action—presumably forfeiture or a cause of action seeking an order of protection, although the Court does not limit Nassau County to these theories—to maintain possession of the seized longarms.

• Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed. If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question.

Neither Nassau County nor the state has complied with this directive by instituting such procedures and continue on with their unconstitutional policies, and is in effect a "thumbing of the municipal nose at [this] Court" to quote J. Rovner, concurring opinion. *Ezell v. City of Chicago* 651F.3$^{d}$ 684, 7th CA, 2011. Since the directive was not included in the Orders of the Court, Nassau County cannot be held in contempt at this time, thus necessitating the Preliminary Injunction requested in this motion to prevent the continued and repeated violation of the rights of plaintiff and similarly situated persons in Nassau County.

## VI.

## POST DEPRIVATION HEARING SHOULD BE EXTENDED TO HANDGUNS AND PISTOL PERMITS

The sought post deprivation hearing should be extended to the confiscation of handguns and denial, suspension, revocation or limitations to pistol permits as least as to handguns in the home. *Heller* and *McDonald* makes it clear that individuals have an

enumerated, individual, fundament constitutional right to possess a handgun in the home

for defense of self and family and for other lawful purposes. If the State of New York and

the County of Nassau insist that one have a permit for mere possession of a handgun in

the home, then it follows that one has an individual, fundamental constitutional right to a

pistol permit. The county's assertion in OPS 10023 that a pistol license is a privilege as

opposed to a right cannot be reconciled with *Heller*.

The Appeal of Denial as noted at p. 12 of the Nassau County Pistol License

Handbook does not meet the requirements of due process as it is only effective upon the

receipt of a letter of revocation or suspension. In many cases of confiscation, no such

letters are sent, the license is simply taken, leaving the gun owner in limbo for months if

not years while the so called "investigation" takes place. In addition, the person before

whom the Appeal is presented is a member of the same police department that has denied

or confiscated the permit in the first place and therefore not impartial.


VII.

RIGHT TO INJUNCTIVE RELIEF


The right to injunctive relief in a Second Amendment context was

discussed at length in *Ezell v. City of Chicago*, 651 F.3rd. 684, 7th Cir., 2011.

In that case the Court stated:

> . . . that to win a preliminary injunction, a party must show that it has (1)
> no adequate remedy at law and will suffer irreparable harm if a
> preliminary injunction is denied and (2) some likelihood of success on the
> merits. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir.2006);
> *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir.2004); *Abbott Labs. v.
> Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir.1992).

The Court further stated that:

For some kinds of constitutional violations, irreparable harm is presumed. *See* 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). This is particularly true in First Amendment claims. *See, e.g., Christian Legal Soc'y,* 453 F.3d at 867 ("[V]iolations of First Amendment rights are presumed to constitute irreparable injuries...." (citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976))). The loss of a First Amendment right is frequently presumed to cause irreparable harm based on "the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Miles Christi Religious Order v. Twp. of Northville,* 629 F.3d 533, 548 (6th Cir.2010) (internal alteration and quotation marks omitted); *see also KH Outdoor, LLC v. City of Trussville,* 458 F.3d 1261, 1272 (11th Cir.2006). The Second Amendment protects similarly intangible and unquantifiable interests. *Heller* held that the Amendment's central component is the right to possess firearms for protection. 554 U.S. at 592-95, 128 S.Ct. 2783. Infringements of this right cannot be compensated by damages.[10]

Where a State Statute or Policy is either unconstitutional on its face, or is being applied in a bad faith attempt to discourage constitutionally protected activities, federal courts should be available to fully vindicate the rights of citizens by injunction. *Original Fayette County Civic and Welfare League v. Elligton,* W.D. Tenn. 309 F. Supp. 89. W.D. Tenn, 1970 at page 95 [hn 12]. If there is an indication that the government officials intend to continue the same unconstitutional practices alleged in the complaint injunctive relief is appropriate. *Tara Enterprises v. Humble, C.A. 8, 1980, 622* F2d. 200. OPS 10023, as applied certainly indicates that the government officials intend to continue with their same unconstitutional practices as will as their absolute refusal to provide a prompt post deprivation hearing.

Plaintiff can show some probability of success by the fact that this court has already held the actions complained of to be in violation of the 4th, 5th and 14th Amendments and the failure to provide post deprivation hearing to be a violation of due process.

Memorandum in Support                    14

VIII.

## NEW YORK PENAL LAW ARTICLE 400
## UNCONSTITUTIONAL AS APPLIED

In addition, to the extent the "policy" is derived from or justified by the language

of McKinney's Penal Law Article 400 that gives the licensing officer almost unlimited

discretion in granting, denying , suspending or revoking pistol licenses, such law is

unconstitutional, at least as applied to the keeping of firearms in the home for the purpose

of defense of self and family. The constitutional problems arise from the language and its

interpretation. Relevant portions are as follows:

> 1. Eligibility. No license shall be issued or renewed pursuant to this
> section except by the licensing officer, and then only after investigation and
> finding that all statements in a proper application for a license are true. No license
> shall be issued or renewed except for an applicant:

>> (b) of good moral character;
>> (k) who has not had a license revoked;
>> (n) concerning whom no good cause exists for the denial of the license.

>> 2. Types of licenses. . . . A license for a pistol or revolver, . . .  shall be
>> issued to (a) have and possess in his dwelling by a householder; (b) have
>> and possess in his place of business by a merchant or storekeeper.

>> 11. License: revocation and suspension. (a) . . . a license may be revoked
>> and cancelled at any time . . . by the licensing officer . . .

The most recent pronunciation by a New York Appellate Court is *DeAngelo v.*

*Burns* 124 A.D.3d 1156,  (3rd Dept., 2015). In that case a pistol licensee was involved

with a dispute with his neighbors during which he displayed his loaded handgun. He was

charged with "brandishing" tried and acquitted. The jury believed the "brandishing" was

done in self defense. Even though he had committed no crime and had used his handgun

for a constitutionally protected purpose, self defense, his pistol license was revoked. The

licensing officer did not believe he had the maturity, good character, temperament or

judgment to have a pistol permit. In upholding the licensing officers decision the court

held 1156:

> There is no question that "[r]espondent is vested with broad discretion in determining whether to revoke a pistol permit and may do so for any good cause, including a finding that the petitioner lack[s] the essential temperament or character which should be present in one entrusted with a dangerous instrument ..., or that he or she does not possess the maturity, prudence, carefulness, good character, temperament, demeanor and judgment necessary to have a pistol permit". . . .
>
> Upon review, "respondent's resolution of factual issues and credibility assessments are accorded deference, and the determination will not be disturbed absent an abuse of discretion or a showing that [such determination] was made in an arbitrary and capricious manner".

Licenses have been revoked for leaving a handgun in the locked trunk of the

licensee's car, *D'Onofrio v. Kelly*, 22 A.D.3d 343, 802 N.Y.S.2d 159 (1st Dep't 2005); an

allegation that the licensee had hit someone with a hockey stick, *Seamon v. Coccoma*,

281 A.D.2d 824, 721 N.Y.S.2d 884 (3d Dep't 2001); the licensee had a business

association with another alleged to be a member of organize crime, *Saleeby v. Safir*, 289

A.D.2d 60, 734 N.Y.S.2d 139 (1st Dep't 2001); licensee failed to notify licensing offcier

that he had been arrested, although charges were dropped, *Cuda v. Dwyer*, 967 N.Y.S.2d

302 (App. Div. 4th Dep't 2013); licensee got into a fight (not involving guns), *Nichols v.

Richards*, 78 A.D.3d 1453, 913 N.Y.S.2d 352 (3d Dep't 2010); for getting drunk,

*Biggerstaff v. Drago*, 65 A.D.3d 728, 883 N.Y.S.2d 657 (3d Dep't 2009); failed to

"voucher" his second handgun because he never used it and had forgotten about it,

*Broadus v. City of New York Police Dept.* (License Division), 62 A.D.3d 527, 878

N.Y.S.2d 738 (1st Dep't 2009); where licensee took his pistol on a trip to Nevada, when

he legally possess same and traveled in compliance with federal law, *Beach v. Kelly*, 52

A.D.3d 436, 860 N.Y.S.2d 112 (1st Dep't 2008).

In each of these cases, the entire license was revoked, denying the licensee's

enumerated, individual, fundamental right to possess a handgun in his home.

In *26 Fordham Urb.L.J. 121, Novak*, (1998) after an exhaustive review of the
New York system of handgun licensing the author concluded:

> Moreover, the State is exploiting the elusive character of gun licensing by
> denying procedural safeguards required for adjudicatory proceedings but not for
> ministerial ones, and then granting deferential judicial review only afforded to
> adjudicatory proceedings and not to ministerial ones.  This lack of fairness in the
> procedures provided in the current administrative scheme is compounded by the
> undemocratic practice of keeping information from the public.

No other enumerated, individual, fundamental constitutional right has ever been

treated in such as fashion as New York treats the right to keep and bear arms. (at least not

since post civil war and later treatment of Black Americans by the southern states). A

permit necessary to keep a handgun in the home is only issued if the applicant is of "good

moral character" and where "no good cause exists for the denial of the license". But it is

the licensing officer what decides what is "good moral character" and what is "good

cause" for denial. He has "broad discretion" and is given "deference" and his decision is

not be disturbed absent an abuse of discretion or a showing that [such determination] was

made in an arbitrary and capricious manner".

Thus, Article 400, as it applies to handguns kept in the home should be declared

unconstitutional or at least in the alternative, any denial, revocation, suspension or

confiscation of a pistol license should be subject to a prompt post deprivation hearing

before a qualified impartial judge applying standards set forth in *Heller*. Persons who

have been adjudicated insane and who have been convicted of a violent felony or who are

currently under an Order of Protection may be denied a permit. All others are entitled to the permit under the Constitution of the United States.

IX.

CONCLUSION

Citizens have a fundamental right to keep and bear arms, at least in their homes, for the purpose of self defense and other lawful purposes. They also have a right to be secure in their papers and effects from unreasonable searches and seizures and should not be deprived of liberty or property without due process of law.  Nassau County, in its firearms confiscation policy, as applied as set forth above, violates all of these fundamental rights of its citizens and to the effect that Penal Law Article §§ 400.00 (1), (2) and (11) authorizes or enables those policies, it is unconstitutional. Plaintiff is therefore entitled to injunctive relief to stop ongoing and future violation of these rights.

Dated: Brooklyn, New York
       May 15, 2015

/S/_____
Robert T. Bean (RB 4464)
Attorney for the Plaintiff
Law Office of Robert T. Bean
3033 Brighton 3rd Street
Brooklyn, New York 11235
 (718) 616-1414
E-Mail: RBeanlaw@aol.com

To:

Via ECF
CARNELL T. FOSKEY
Nassau County Attorney
Attorney for Defendants
Diane C. Petillo
Deputy County Attorney
One West Street☐Mineola, New York 11566
(516) 571-0709